No. 20-55253

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

BRYCE ABBINK,

*Plaintiff-Appellant,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California,
Case No. 8:19-cv-01257-JFW-PJWx
The Honorable John F. Walter, United States District Judge.

---

## OPENING BRIEF FOR
## PLAINTIFF-APPELLANT BRYCE ABBINK

---

Aaron D. Aftergood
(aaron@aftergoodesq.com)
THE AFTERGOOD LAW FIRM
1880 Century Park East
Ste. 200
Telephone: (310) 551-5221

Taylor T. Smith
(tsmith@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue
Ste. 300
Denver, Colorado 80210
Telephone: (720) 907-7628

*Attorneys for Appellant Bryce Abbink*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ........................................................ 4

STATEMENT OF PERTINENT STATUTORY PROVISIONS .............. 5

ISSUES PRESENTED FOR REVIEW .................................................. 9

STATEMENT OF THE CASE ............................................................. 10

SUMMARY OF THE ARGUMENT ..................................................... 15

STANDARD OF REVIEW ................................................................. 17

ARGUMENT ................................................................................... 18

I.   THE DISTRICT COURT ERRED IN DISMISSING ABBINK'S
     CLAIM AGAINST EXPERIAN FOR ITS FAILURE TO
     IMPLEMENT REASONABLE PROCEDURES TO PREVENT
     THE MISUSE OF CONSUMER REPORTS. ................................. 18

     A.   The FCRA And Prescreened Consumer Reports ................. 20

     B.   As This Court Explained In *Pintos*, Experian's Liability
          Under Section 1681e(a) Can Be Predicated On An
          Underlying Violation Of Section 1681b Committed By Lend
          Tech ............................................................................... 22

     C.   The District Court Also Erroneously Required Abbink To
          Plead Specifics Regarding Experian's Internal Procedures To
          Pursue A Claim Under Section 1681e(a). .......................... 26

          1.   To state a claim under Section 1681e(a) Abbink need
               only show the occurrence of the harm that Experian's
               procedures were meant to prevent .............................. 27

i

2.      Abbink alleged sufficient factual allegations to give rise to a reasonable inference that Experian failed to implement reasonable procedures. ............................ 30

3.      Because Section 1681e(a) provides Experian with an exception to liability, it is Experian who bears the burden to plead how its procedures are reasonable.... 35

D.      Abbink Sufficiently Alleged A Willful Violation—Contrary To The District Court's View, Abbink Is Not Required To Allege Facts To Demonstrate That Experian Had Knowledge Of Lend Tech's Misuse. ......................................................... 41

II.     THE DISTRICT COURT ERRED IN DENYING ABBINK LEAVE TO AMEND HIS COMPLAINT ................................................... 44

CONCLUSION ................................................................................. 50

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**

*Aleksic v. Experian Information Solutions, Inc.*, No. 13 C 7802, 2014 WL 2769122 (N.D. Ill. June 18, 2014) ................................................. 32

*AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692 (9th Cir. 1999) ....... 17

*Baker v. Trans Union LLC*, No. CV-10-8038-PCT-NVW, 2010 WL 2104622 (D. Ariz. May 25, 2010) ................................................. 23

*Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) .................................................... 28

*Deschaaf v. Am. Valet & Limousine Inc.*, 234 F. Supp. 3d 964 (D. Ariz. 2017) ............................................................................................... 42

*Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197 (C.D. Cal. 2007) ............. 43

*Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083 (9th Cir. 1998) ......... 17

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) ........................................... 20, 28, 34

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) .................... 28

*Levine v. Safeguard Health Enterprises, Inc.*, 32 F. App'x 276 (9th Cir. 2002) ............................................................................................... 44

*Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118 (11th Cir. 2006) ........................................... 29, 30, 34

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ..................................... 17

*Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019) ........................... 20, 21, 35, 36, 37, 38

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768 (9th Cir. 2002) ................................................................ 17

*Pasternak v. Trans Union LLC*, No. C 07-04980 CW, 2008 WL 11388680 (N.D. Cal. Dec. 19, 2008).................................................. 34

*Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) ................................. 23, 24, 25, 29, 46

*Robinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920 (N.D. Ill. 2016) ............................................ 42

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)................................. 41

*Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896 (3d Cir. 2011) .................................................. 29

*Shotkoski v. Denver Investment Group, Inc.*, 134 P.3d 513 (Colo. App. 1986)................................................................................................ 47

*Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ............................................. 42

*Snell v. G4S Secure Sols. (USA) Inc.*, 424 F. Supp. 3d 892 (E.D. Cal. 2019)................................................................................................ 44

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ..................................... 21

*Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016) ..................................................... 44

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ............................................. 28

**STATUTES**

Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* .........................*passim*

28 U.S.C. § 1291 ................................................................................ 5

28 U.S.C. § 1331 .............................................................. 4

Colo. Rev. Stat. § 12-10-705 (2019)........................................ 32

**REGULATIONS**

16 C.F.R. § 642.3.............................................................. 49

**RULES**

Fed. R. App. P. 3 ..............................................................5

Fed. R. App. P. 4 ..............................................................5

Fed. R. Civ. P. 8 .......................................................... 3, 19

Fed. R. Civ. P. 9 .......................................................... 20, 42

**OTHER SOURCES**

FTC Staff Report, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT
REPORTING ACT (July 2011),
www.ftc.gov/sites/default/files/documents/reports/40-years-
experience-fair-credit-reporting-act-ftc-staff-report-summary-
interpretations/110720fcrareport.pdf
(last visited June 4, 2020)...................................... 48, 50

**INTRODUCTION**

Appellant Bryce Abbink ("Appellant" or "Abbink") respectfully

appeals from the judgment of the District Court granting Appellee

Experian Information Solutions, Inc.'s ("Appellee" or "Experian") motion

to dismiss and dismissing Abbink's claims against Experian for

violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

("FCRA" or "Act").

This case challenges Experian's sale of consumer reports to

Defendant Lend Tech Loans, Inc. ("Lend Tech") absent <u>any</u> permissible

purpose in violation of 15 U.S.C. § 1681e(a). The facts are

straightforward: Experian repeatedly sold consumer reports to Lend

Tech, which claimed to be providing consumers firm offers of credit,

which is a permissible purpose under the Act. Lend Tech, however, had

no intention of offering consumers any form of credit at all. Rather,

Lend Tech resold the reports to Defendant Unified Document Services,

LLC ("UDS") who used the reports to unlawfully solicit student loan

borrowers to purchase its quasi-fraudulent document preparation

services. Had Experian implemented reasonable procedures regarding

the procurement of its reports, it would have been aware of this scheme.

1

Unfortunately, Experian failed to implement reasonable procedures.

Following Experian's unlawful sale of his consumer report to Lend Tech, Abbink, on behalf of himself and all others similarly situated, filed suit against Experian, Lend Tech, and UDS, alleging violations of the FCRA.[1] Relevant to this appeal, Abbink contends that Experian violated 15 U.S.C. § 1681e(a) by failing to implement reasonable procedures to prevent the misuse of its consumer reports. The District Court dismissed Abbink's claims against Experian without leave to amend. Abbink moved to reconsider the lower court's denial of leave to amend, but the District Court denied that Motion and entered final judgment.

The District Court erred in dismissing Abbink's claim against Experian. First, the District Court erred by concluding that prior to pursuing a claim under Section 1681e(a) Abbink must first show that Experian itself violated Section 1681b. The conclusion is at odds with controlling Ninth Circuit precedent as well as the plain language of the statute, which requires Abbink to allege a violation of Section 1681b

---

[1] Both Lend Tech and UDS refused to appear and respond to Abbink's allegations. Consequently, default judgment was entered against them on February 7, 2020. (ER06, ER52-53.)

against the recipient of the report, Lend Tech, prior to challenging the reasonableness of Experian's procedures. Applied here, Abbink plainly alleged that Lend Tech obtained his report in violation of Section 1681b.

Second, the District Court also erroneously required Abbink to plead specifics regarding Experian's internal processes as a precondition to challenging those same procedures. This creates a heightened and insurmountable pleading standard for Section 1681e(a) claims. Under Rule 8, Abbink is only required at the pleading stage to allege facts showing the occurrence of the harm that the procedures were supposed to prevent as well as facts to plausibly suggest that Experian's procedures are inadequate. Discovery will reveal which processes were deficient, and to the extent such information was disclosed the lower court erred in denying leave to amend.

Third, the District Court erred in finding that Abbink failed to allege sufficient facts to state a claim for a willful violation of the FCRA. According to the lower court, Abbink supposedly did not allege facts demonstrating Experian's knowledge of Lend Tech's misuse of his report. In setting out this holding, the District Court ignored that under the FCRA willful violations encompass both knowing *and reckless*

*violations.* Moreover, Abbink alleged facts to demonstrate that Experian either knew about Lend Tech's misuse or that it should have known, both of which were sufficient to avoid dismissal.

Finally, the District Court erred in denying Abbink leave to amend. The denial was premised exclusively on the District Court's incorrect assumption that Abbink must state a Section 1681b claim against Experian itself prior to pursuing a claim under Section 1681e(a). To the extent the Court believes that additional factual allegations are necessary, Abbink should have been granted leave to amend.

In light these errors, the District Court's Orders dismissing Abbink's claims against Experian should be reversed and the case should be remanded so that Appellant Abbink can have his day in Court.

## JURISDICTIONAL STATEMENT

The United States District Court for the Central District of California had subject matter jurisdiction under 28 U.S.C. § 1331 because this action arose under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. This Court has

jurisdiction pursuant to 28 U.S.C. § 1291 because the present appeal is from a final judgment, disposing all of the parties' claims, made by the United States District Court for the Central District of California. The District Court entered final judgment on February 7, 2020. (ER05, ER52-53.) Abbink filed a notice of appeal on March 6, 2020. (ER01.) The appeal is timely pursuant to Fed. R. App. P. 3 and 4(a)(1)(A) because it was filed within thirty (30) days of the District Court's entry of final judgment.

## STATEMENT OF PERTINENT STATUTORY PROVISIONS

### Fair Credit Reporting Act

**15 U.S.C. § 1681b(a)**

(a) In general

Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe--

(A) intends to use the information in connection with a

credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information--

>(i) in connection with a business transaction that is initiated by the consumer; or

>(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

(G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards.

(4) In response to a request by the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency), if the person making the request certifies to the consumer reporting agency that--

(A) the consumer report is needed for the purpose of establishing an individual's capacity to make child support payments, determining the appropriate level of such payments, or enforcing a child support order, award, agreement, or judgment;

(B) the parentage of the consumer for the child to which the obligation relates has been established or acknowledged by the consumer in accordance with State laws under which the obligation arises (if required by those laws); and

(C) the consumer report will be kept confidential, will be used solely for a purpose described in subparagraph (A), and will not be used in connection with any other civil, administrative, or criminal proceeding, or for any other purpose.

(D) Redesignated (C)

(5) To an agency administering a State plan under section 654 of Title 42 for use to set an initial or modified child support award.

(6) To the Federal Deposit Insurance Corporation or the National Credit Union Administration as part of its preparation for its appointment or as part of its exercise of powers, as conservator, receiver, or liquidating agent for an insured depository institution or insured credit union under the Federal Deposit Insurance Act or the Federal Credit Union Act, or other applicable Federal or State law, or in connection with the resolution or liquidation of a failed or

failing insured depository institution or insured credit union, as applicable.

## 15 U.S.C. § 1681b(c)(1)

(c) Furnishing reports in connection with credit or insurance transactions that are not initiated by consumer

(1) In general

A consumer reporting agency may furnish a consumer report relating to any consumer pursuant to subparagraph (A) or (C) of subsection (a)(3) in connection with any credit or insurance transaction that is not initiated by the consumer only if--

(A) the consumer authorizes the agency to provide such report to such person; or

(B)(i) the transaction consists of a firm offer of credit or insurance;

(ii) the consumer reporting agency has complied with subsection (e);

(iii) there is not in effect an election by the consumer, made in accordance with subsection (e), to have the consumer's name and address excluded from lists of names provided by the agency pursuant to this paragraph; and

(iv) the consumer report does not contain a date of birth that shows that the consumer has not attained the age of 21, or, if the date of birth on the consumer report shows that the consumer has not attained the age of 21, such consumer consents to the consumer reporting agency to such furnishing.

## 15 U.S.C. § 1681b(f)

(f) Certain use or obtaining of information prohibited

A person shall not use or obtain a consumer report for any purpose unless--

> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

**15 U.S.C. § 1681e(a)**

(a) Identity and purposes of credit users

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred in concluding that Abbink failed to state a claim against Experian for a willful violation of 15

U.S.C. § 1681e(a) when he alleged an underlying 15 U.S.C. § 1681b claim against Experian's subscriber, Lend Tech, and specifically pleaded that Experian knew or should have known his consumer report was released to Lend Tech absent any permissible purpose. This issue was raised by Experian in its Motion to Dismiss filed on August 14, 2019. (ER48.) The District Court ruled on this issue in its December 5, 2019 Order dismissing the claims asserted against Experian. (ER11, ER50.)

2.    Whether the District Court erred by failing to grant Abbink leave to amend his Complaint to allege additional facts to support his 15 U.S.C. § 1681e(a) claim. The District Court denied Abbink leave to amend in its December 5, 2019 Order. (ER16.) The District Court then refused to reconsider its denial of leave to amend in its January 23, 2020 Order denying Abbink's Motion to Reconsider. (ER7.)

## STATEMENT OF THE CASE

Experian is one of the Nation's major credit bureaus, known as consumer reporting agencies ("CRA") under the FCRA. (ER21.) Experian generates a substantial portion of its revenue by aggregating the data of millions of consumers worldwide and then selling that

information to banks, credit card companies, insurers, and various other companies that have a permissible purpose under the Act. (*Id.*)

Lend Tech is a California corporation that claims to engage in the business of mortgage lending. (ER24.) In reality, however, Lend Tech does not hold any mortgage license that is registered on the National Multistate Licensing System ("NLMS"). (ER21-22.) In fact, Lend Tech does not offer consumers any form of credit or insurance at all. (ER25.) Rather, Lend Tech obtained consumer reports from Experian only to turn around and sell those reports to Defendant UDS. (ER21-22, 25.)

Despite not having a permissible purpose for requesting the reports, in or around January 2019, Lend Tech submitted a request to Experian to obtain Abbink's consumer report. (ER25.) Specifically, Lend Tech requested information regarding Abbink's total outstanding federal student loan debt. (ER31.) In making the request, Lend Tech provided inaccurate information, including a nonworking telephone number and a business address that failed to match its current address on its California business filing. (ER22.) Further, despite Lend Tech's claim that it was going to use the reports to extend mortgage related firm offers of credit, Lend Tech failed to possess any license to solicit

Abbink for a mortgage related product and in reality had no permissible purpose. (ER21-22, ER25, ER30-31.)

Rather than deny Lend Tech's request or take any other steps to reasonably investigate its stated permissible purpose, Experian sold Abbink's consumer report to Lend Tech on January 21, 2019. (ER25.) In the process, Experian wholly failed to implement reasonable procedures to prevent the furnishing of consumer reports for impermissible purposes. (*Id.*) Experian failed to make a reasonable effort to verify Lend Tech's identity or the supposed "permissible purpose" that Lend Tech provided to obtain Abbink's consumer report. (*Id.*) Instead, Experian simply accepted Lend Tech's assertion that it had a permissible purpose for obtaining the consumer reports—eschewing a reasonable investigation in favor of taking Lend Tech's claim at face value—and sold Abbink's consumer report without an actual permissible purpose. (ER25, ER30-31.) Tellingly, Experian accepted Lend Tech's stated business address and telephone number (both of which are incorrect) and published both pieces of inaccurate information on Abbink's consumer report. (ER31.)

Shortly thereafter, Lend Tech sold information contained in

Abbink's consumer report to UDS. (ER25.) At no time did Lend Tech provide Abbink a firm offer of credit. (*Id.*) UDS used the information provided by Lend Tech to target, via direct mailings, Abbink and the alleged class members for the purpose of soliciting them to purchase its "fee-based application assistance" service. (ER22-23, ER 25.) That is, for a substantial fee, UDS offers to complete documents on behalf of consumers to consolidate their outstanding federal student loans—paperwork that can be easily completed for free via the Department of Education. (*Id.*) UDS also does not offer consumers any form of credit at all. (ER26, ER37.) The Dept. of Education even warns consumers not to fall prey to the deceptive practices of companies like UDS. (ER25, ER37.) Regardless, UDS used the personal information in Abbink's consumer report that it obtained from Lend Tech (and originally from Experian) to target Abbink. (ER37-38, ER45.) The mailer prominently featured Abbink's total federal student loan debt, statements indicating that he may be eligible for consolidation of his federal student loans, and various other misleading statements. (ER22-23, ER38, ER45.)

On June 21, 2019, Abbink filed his Class Action Complaint challenging the Defendants' conduct. (ER19.) Specific to Experian,

Abbink alleged that it violated the FCRA by selling his report to Lend Tech absent any permissible purpose and for failing to implement reasonable procedures. (ER20, ER29-32.) On August 14, 2019, Experian filed its Motion to Dismiss for failure to state a claim. (ER48.) Abbink filed his Response in Opposition on August 26, 2019 (ER49), and Experian filed its Reply on August 30, 2019 (ER 49).

On December 5, 2019, the Court issued its Order granting Experian's Motion to Dismiss without leave to amend. (ER11, ER50.) On January 2, 2020, Abbink moved for reconsideration of the Order on the grounds that the Court committed clear error by ignoring controlling precedent in denying Abbink leave to amend. (ER52.) Experian filed its opposition to reconsideration on January 13, 2020 (ER52), and Abbink filed his reply in support of reconsideration on January 17, 2020 (ER52). On January 23, 2020, the District Court denied the Motion to Reconsider its decision to deny Abbink leave to amend his Complaint. (ER07, ER52.) On February 7, 2020, the District Court entered Final Judgment in this action. (ER05, ER52-53.) On March 6, 2020, Abbink timely filed his notice of appeal from the District Court's Final Judgment. (ER01, ER53.)

14

## SUMMARY OF THE ARGUMENT

I.      The District Court committed reversible error in dismissing Abbink's Section 1681e(a) claim against Experian. The lower court's finding that Abbink was required to state a Section 1681b claim against Experian as a prerequisite to pursuing a claim under Section 1681e(a) claim was incorrect in light of the plain language of the statute and controlling Ninth Circuit precedent. It is true that a Section 1681e(a) claim must be predicated on a Section 1681b violation. At the same time, however, a Section 1681b violation can be (and typically is) asserted against the entity that received the report. Here, Abbink plainly alleged that Lend Tech obtained and used his consumer report from Experian absent any permissible purpose. This is the underlying Section 1681b violation on which Abbink's Section 1681e(a) claim against Experian is predicated.

The lower court also erred by requiring Abbink to plead specifics regarding Experian's internal procedures to challenge those procedures. This conclusion creates a heightened and insurmountable pleading standard for consumers. To state a prima facie case under Section 1681e(a), Abbink need only allege facts to demonstrate the occurrence of

the harm that Experian's procedures were supposed to prevent (the misuse of consumer reports). Further, Abbink must allege sufficient facts to plausibly suggest that Experian's procedures were inadequate in failing to stop the misuse. Abbink did so here.

Finally, the lower court erroneously required Abbink to allege facts regarding Experian's state of mind and knowledge of Lend Tech's misuse of his report to state a claim for a willful violation of the Act. This conclusion incorrectly limits willful violations under the FCRA to only knowing violations. Under the FCRA, willfulness can be found for both knowing and reckless violations, and Abbink has sufficiently alleged facts to demonstrate that Experian either knew of Lend Tech's misuse of the information or should have known about it.

Because he alleged facts to demonstrate that his report was misused and that Experian's procedures failed to reasonably guard against such misuse, Abbink's allegations are sufficient to state a claim under Section 1681e(a) against Experian.

II.    The District Court also erred in dismissing Abbink's Section 1681e(a) claim without leave to amend. The District Court's decision was based on its erroneous conclusion that Abbink must allege that

Experian violated Section 1681b as a prerequisite to challenging Experian's procedures under Section 1681e(a). As explained, this holding conflates the necessity of an underlying violation of 1681b with the party that the 1681b claim must be asserted against. Since Abbink sufficiently alleged that Lend Tech obtained and used his report impermissibly under Section 1681b, he pleaded a 1681b violation to serve as the basis for challenging Experian's procedures under 1681e(a). And to the extent the Complaint lacked these specifics, Abbink should have been granted leave to amend.

**STANDARD OF REVIEW**

A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) without leave to amend is reviewed *de novo. Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 772 (9th Cir. 2002). The scope of review is generally limited to the contents of the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). All factual allegations are taken as true and construed in the light most favorable to the plaintiff as the nonmoving party. *Enesco Corp.*, 146 F.3d at 1085; *AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir. 1999).

# ARGUMENT

## I. THE DISTRICT COURT ERRED IN DISMISSING ABBINK'S CLAIM AGAINST EXPERIAN FOR ITS FAILURE TO IMPLEMENT REASONABLE PROCEDURES TO PREVENT THE MISUSE OF CONSUMER REPORTS.

The District Court's Order dismissing Abbink's Section 1681e(a) claim against Experian suffers from three fundamental flaws. First, the lower court erroneously held that Abbink must state a claim against Experian for a violation of Section 1681b as a prerequisite to pursuing a claim under Section 1681e(a). Second, the lower court erred by requiring Abbink to plead with specificity regarding Experian's internal procedures to challenge the reasonableness of its procedures under Section 1681e(a). Third, the lower court incorrectly required Abbink to plead facts regarding Experian's knowledge of Lend Tech's misuse of the report to state a claim for a willful violation of the Act. These errors warrant reversal.

The lower court's first error confuses the necessity of an underlying Section 1681b claim with whom it must be asserted against. It is undisputed that Abbink must show that his report was furnished for an impermissible purpose prior to challenging Experian's preventative procedures. However, the lower court incorrectly required

Abbink to assert the Section 1681b violation against Experian itself. This isn't required. Put succinctly, Abbink's claim against Experian for a violation of Section 1681e(a) must be premised on an underlying Section 1681b violation but the Section 1681b claim does not have to be alleged against Experian.

The second error—where the lower court required Abbink to plead the specifics of Experian's internal procedures—incorrectly applies a heightened pleading standard. While this Court has not yet addressed the pleading standards for a Section 1681e(a) claim, a review of related FCRA claims demonstrates that Rule 8 applies: a consumer need only set forth a plain and concise statement showing an entitlement to relief—consumers aren't required to plead specifics regarding a CRA's procedures to challenge them. Instead, Abbink must only allege facts to plausibly suggest that Experian released his report for an impermissible purpose and that its procedures were unreasonable.

The third conclusion, that Experian must have known about Lend Tech's misuse of the report for Abbink to have any recourse at all, erroneously required Abbink to allege facts showing that Experian had knowledge of Lend Tech's violations. Under the FCRA, a willful

violation can be either a knowing or reckless violation of the Act. Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Here, Abbink alleged sufficient facts at the pleading stage that if proven true reveal that Experian either had knowledge of Lend Tech's misuse of consumer reports or should have known Lend Tech was misusing the information.

As such, and as explained further below, the District Court's dismissal of Abbink's Section 1681e(a) claim was made in error and should be reversed.

### A. The FCRA And Prescreened Consumer Reports.

Congress enacted the FCRA "in response to concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019) (quoting *Syed v. M-I, LLC*, 853 F.3d 492, 496 (9th Cir.), *cert. denied*, —— U.S. ——, 138 S. Ct. 447, 199 L.Ed.2d 340 (2017)). The FCRA aimed "to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). As the

FCRA's focus is on consumer privacy, courts are to construe the FCRA liberally in favor of consumers. *See id.* (citing *Kates v. Crocker Nat. Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985)) ("These consumer oriented objectives support a liberal construction of the FCRA."). Indeed, "[t]he modern information age has shined a spotlight on information privacy, and on the widespread use of consumer credit reports to collect information in violation of consumers' privacy rights." *Syed v. M-I, LLC*, 853 F.3d 492, 495 (9th Cir. 2017).

To curb such abuses, Congress established the circumstances under which a CRA may furnish a consumer report (Section 1681b) as well as the procedures that CRAs must employ to ensure the accuracy and proper use of such reports (Section 1681e). Relevant here, the FCRA permits a third-party to obtain a consumer report from a CRA absent a consumer's knowledge or consent so long as the purpose is to solicit consumers via firm offers of credit. *See* 15 U.S.C. § 1681b(c)(1); *see also Nayab*, 942 F.3d at 488-89. This process is known as prescreening. *Nayab*, 942 F.3d at 488-89.

Prior to furnishing a prescreened report, the FCRA requires CRAs to establish and "maintain reasonable procedures designed to . . . limit

the furnishing of consumer reports to the purposes listed under section 1681b." 15 U.S.C. § 1681e(a). Prospective users must "identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." *Id.* A CRA must "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." *Id.* Further, and critically here, a CRA may not "furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b." *Id.*

As explained below, by failing to implement procedures to prevent Lend Tech's misuse of Abbink's consumer report, Experian plausibly had reasonable grounds for believing the report would be improperly used and is thus liable under Section 1681e(a).

### B. As This Court Explained In *Pintos*, Experian's Liability Under Section 1681e(a) Can Be Predicated On An Underlying Violation Of Section 1681b Committed By Lend Tech.

Section 1681e(a) requires CRAs to implement reasonable procedures to prevent the misuse of consumer reports by credit users. *See* 15 U.S.C. § 1681e(a). When a CRA fails to implement reasonable

procedures and furnishes a consumer report to its subscriber absent any permissible purpose, the CRA "may be liable for *its subscriber's violation.*" *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010) (citing *Guimond*, 45 F.3d at 1333) (emphasis added). In dismissing Abbink's Section 1681e(a) claim, the District Court ignored *Pintos* and, instead, offered the following rationale:

> To allege a claim for a violation of Section 1681e, Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010). However, "a plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b." *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000); *see also Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 878 (W.D. Tex. 2016); *Baker v. Trans Union LLC*, 2008 WL 4838714, at *5 (D. Ariz. Nov. 6, 2008). In this case, the Court has already concluded that Plaintiff failed to allege any facts demonstrating that Experian violated Section 1681b(c). Because Plaintiff failed to demonstrate that Experian released his consumer report in violation of Section 1681b(c), Plaintiff cannot bring a claim based on Experian's violation of the "reasonable procedures" requirement of Section 1681e.

(ER14.) To its credit, the District Court is correct that a Section 1681e(a) claim must be premised on a violation of Section 1681b. *See Baker v. Trans Union LLC*, No. CV-10-8038-PCT-NVW, 2010 WL 2104622, at *4 (D. Ariz. May 25, 2010) ("Stating a claim under § 1681b

is a prerequisite to asserting a claim under § 1681e(a) because without a § 1681b violation, there is no basis to challenge a consumer reporting agency's preventative procedures."). Where the District Court gets it wrong is that it required Abbink to premise the claim on <u>Experian's own violation of Section 1681b</u>. This plainly contradicts clear precedent and flouts the purpose of Section 1681e(a).

In *Pintos*, the Court specifically addressed whether Experian could be held liable under Section 1681e(a) for its subscriber's, Pacific Creditors Association's, violation of Section 1681b (as opposed to its own violation). *Pintos*, 605 F.3d at 676-77 ("We next consider whether Experian is also liable for any violation of the FCRA committed by PCA."). The Court explicitly rejected Experian's argument "that Section 1681e immunizes it from subscribers' FCRA violations." *Id.* at 677. Hence, Abbink's Section 1681e(a) claim against Experian can be premised on a violation of Section 1681b by one of Experian's subscribers. In this case, Abbink alleged that Lend Tech obtained and used his consumer report from Experian absent any permissible purpose. (ER25, ER33-36.) This is the Section 1681b violation on which Experian's liability under Section 1681e(a) is predicated.

Furthermore, the District Court's rationale, if upheld, threatens to effectively eliminate Section 1681e(a) claims. That is, if a consumer is required to state a claim against a CRA for a violation of Section 1681b as a prerequisite to pursuing a claim under Section 1681e(a) and all that a CRA must do to comply with Section 1681b, according to the District Court (ER14), is obtain a subscriber's certification (or general promise to obey the law), then a consumer could never state a claim so long as the CRA obtained a certification.

But this runs contrary to the purpose of Section 1681e(a), which is to require a CRA to do more than accept a subscribers promise to obey the law. *See Pintos*, 605 F.3d at 677 ("Under the plain terms of § 1681e(a), a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use."); *see also* 15 U.S.C. § 1681e(a). And this Court in *Pintos* previously rejected Experian's argument that obtaining a subscriber's certification satisfied its obligations under Section 1681e(a). *See id.* at 677 ("Experian argues that because PCA gave it a 'blanket certification'—a written promise to use Experian's credit

reports only for permissible purposes—the agency satisfied its statutory obligations under § 1681e. We disagree."). Instead, the logical conclusion is to require Abbink to allege an underlying violation of Section 1681b against Lend Tech prior to challenging Experian's procedures. Abbink clearly did so here. This conclusion gives full effect to the purpose of Section 1681e(a)—to require Experian to investigate and discover whether there is any reason to believe that Lend Tech will impermissibly use Abbink's consumer report prior to providing the reports.

Because Abbink sufficiently alleged that Lend Tech obtained and used his report for an impermissible purpose, the Court should find that Abbink has alleged a Section 1681b violation on which Experian's liability can be premised.

C. **The District Court Also Erroneously Required Abbink To Plead Specifics Regarding Experian's Internal Procedures To Pursue A Claim Under Section 1681e(a).**

In addition to the District Court's error in requiring Abbink to state a Section 1681b claim against Experian, the lower court also erred in dismissing Abbink's Section 1681e(a) claim on the supposed grounds that he "fail[ed] to identify a single process or procedure Experian

lacked or failed to follow in evaluating whether Lend Tech had a permissible purpose." (ER14.) This reasoning erroneously places the burden on Abbink to plead specifics about Experian's internal procedures to state a claim challenging the reasonableness of the procedures. Fortunately for consumers, Abbink need only plead facts to demonstrate two things: First, Abbink must demonstrate that his consumer report was released for an impermissible purpose; and second, Abbink must allege sufficient facts that give rise to a reasonable inference that Experian's procedures failed to prevent the misuse.

As explained below, Abbink sufficiently alleged that Experian released his report absent a permissible purpose and that its procedures are plausibly unreasonable.

**1. To state a claim under Section 1681e(a) Abbink need only show the occurrence of the harm that Experian's procedures were meant to prevent.**

This Court has not addressed the pleading standard with respect to Section 1681e(a) claims, however, this Court has addressed standards governing analogous provisions. The FCRA requires CRAs "to maintain 'reasonable procedures' designed 'to assure maximum possible accuracy of the information' contained in credit reports, §

1681e(b), and to 'limit the furnishing of [such reports] to' certain statutorily enumerated purposes, § 1681e(a)[.]" *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). While Section 1681e(b) and Section 1681e(a) are admittedly separate claims, the crux of a CRA's liability under each is the same—the "reasonableness" of its procedures. *See Guimond*, 45 F.3d at 1333.

In *Guimond*, the Ninth Circuit explained, "to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." 45 F.3d at 1333 (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991)). This view is widely accepted. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a prima facie violation of section 607(b), the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citation omitted) ("In order to state a claim under 15 U.S.C. § 1681e(b), a consumer must sufficiently allege "that a credit reporting agency prepared a report

containing 'inaccurate' information."); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011).

*Guimond* illustrates the critical importance of alleging facts to show the occurrence of the underlying harm that the procedures were supposed to prevent. Section 1681e(b) requires CRAs to implement procedures to prevent the dissemination of inaccurate consumer reports. Hence, to state a claim under Section 1681e(b), a consumer must show that a CRA prepared an inaccurate consumer report. At the same time, Section 1681e(a) requires CRAs to implement procedures to prevent the release of a consumer report for an impermissible purpose. Therefore, to make out a prima facie case for a violation of Section 1681e(a), a consumer must present evidence to show that their report was furnished for an impermissible purpose.

Tellingly, courts have reinstated Section 1681e(a) claims where it can be shown a report was released for an impermissible purpose. In *Pintos*, the Court reversed the lower court's grant of summary judgment in Experian's favor upon finding that its subscriber violated Section 1681b. *Pintos*, 605 F.3d at 677. Likewise, in *Levine v. World Fin. Network Nat. Bank*, the Eleventh Circuit reversed the dismissal of a

consumer's claim for a willful violation of Section 1681e(a). 437 F.3d 1118 (11th Cir. 2006). In *Levine*, as here, Experian relied on a facially valid request by the recipient of a consumer report, which was ultimately used for an impermissible purpose. *Id.* at 1121 ("Experian would have us accept that, as a matter of law, its grave responsibility for safeguarding Levine's confidential information extends only so far as a former creditor's facially valid request for a credit report, notwithstanding any reasonable grounds to believe that the request is instead made for an impermissible purpose."). Ultimately, the *Levine* court reversed the dismissal of Experian explaining that the reasonableness of its procedures is a fact intensive inquiry that cannot be resolved by the pleadings. *Id.* at 1121-23.

By requiring Abbink to allege specifics regarding Experian's procedures, the District Court created an unsupported pleading standard that is incongruent with standards for comparable FCRA claims. As explained next, Abbink sufficiently pleaded that Experian's procedures are plausibly unreasonable.

> **2.  Abbink alleged sufficient factual allegations to give rise to a reasonable inference that Experian failed to implement reasonable procedures.**

Applying *Pintos* and *Guimond* to the instant case demonstrates that Abbink's allegations state a claim against Experian for a violation of Section 1681e(a). That is, Abbink's allegations detail how his report was misused and how Experian's procedures are plausibly inadequate.

To start, Abbink explained exactly how Experian impermissibly furnished his report. That is, Experian sold his report to Lend Tech to supposedly be used for a firm offer of credit. (ER30.) Although, Lend Tech never offered Abbink (or any other consumer) any form of credit or insurance at all. (ER25.) Instead, Lend Tech resold his report to UDS absent any permissible purpose. (ER22, ER25.) UDS in turn used his report to solicit him for its fee based document preparation service, which again is not a permissible purpose. (ER25.) Together, these allegations establish that Experian's procedures failed to prevent the underlying harm that Section 1681e(a) sought to protect against—the misuse of reports. As in *Guimond*, these allegations alone sufficiently state a prima facie case to challenge the reasonableness of Experian's procedures.

Nevertheless, Abbink went further by alleging facts that seriously call into question the adequacy of Experian's procedures. Abbink

31

alleged that Experian failed to perform an adequate investigation and that it instead accepted Lend Tech's false certification at face value. (ER25.) In support of this, Abbink alleges that Experian failed to verify that Lend Tech possessed any license registered in the NMLS. (ER21-22, ER30.) Absent such a license, it is unlawful for Lend Tech to solicit consumers for mortgage related credit offers in the State of Colorado. *See* Colo. Rev. Stat. § 12-10-705 (2019) (requiring all mortgage companies to "register with the nationwide mortgage licensing system and registry[.]"). In other words, Experian sold a consumer report to Lend Tech to supposedly be used to solicit a consumer that Lend Tech could not lawfully solicit. Further, the failure to possess adequate licensing is cause for a CRA to conduct further investigation under Section 1681e(a). *See Aleksic v. Experian Information Solutions, Inc.*, No. 13 C 7802, 2014 WL 2769122, at *2 (N.D. Ill. June 18, 2014) ("[P]laintiffs now allege that Clarity knew the lenders were unlicensed and under investigation, which if true, required Clarity to take additional steps to determine whether the lenders would use the data for permissible purposes.").

Experian also accepted Lend Tech's incorrect business address

(which was more than a year old) and a nonworking telephone number, and published both pieces of information on Abbink's consumer report. (ER22, ER31.) It is worth noting that the only information a consumer receives to identify the recipient of his consumer report are: (1) the entity's name, (2) the address, and (3) the telephone number. Experian published inaccurate information for two of the three. This is further evidence that Experian simply accepts Lend Tech's assertions at face value.

Additionally, Experian repeatedly sold Lend Tech consumer reports containing borrowers student loan information only to be used in a scheme for UDS to unlawfully solicit consumers. Neither Lend Tech nor UDS ever offered consumers any firm offers of credit. And Abbink's report was just one of thousands that Lend Tech obtained. Experian's failure to prevent such a brazen misuse of consumer reports poses the question—what, if any, procedures does it have in place to prevent the unlawful resale of its consumer reports?

The District Court gave little consideration to these allegations opting instead to diminish their applicability to Experian's procedures. At the pleading stage, however, Abbink need not (and cannot, absent

discovery) bring forth facts that explain exactly how Experian's procedures are deficient. Rather, Abbink is only required to allege facts to give rise to a reasonable inference that Experian's procedures are inadequate. Taken together, these allegations plausibly suggest that Experian accepted Lend Tech's purported permissible purpose at face value and failed to verify its veracity. Paired with the fact that Experian's procedures failed to prevent the misuse of Abbink's report, the allegations are sufficient to move beyond the pleading stage.

Ultimately, the reasonableness of a CRA's procedures is generally an issue of fact for the jury to determine and not to be resolved by the pleadings. *See Guimond*, 45 F.3d at 1333 ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."); *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1122 (11th Cir. 2006) ("we conclude that the question of whether Experian had "reasonable grounds" to believe that Structure intended to use Levine's consumer report for an impermissible purpose, or whether Experian made "reasonable efforts" to verify the validity of Structure's request, is a fact intensive one that is not resolved by the pleadings."); *Pasternak v. Trans Union LLC*, No.

C 07-04980 CW, 2008 WL 11388680, at *7 (N.D. Cal. Dec. 19, 2008) (citing *Guimond*, 45 F.3d at 1333) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.").

Because Abbink alleges sufficient facts to give rise to a reasonable inference that Experian's procedures were inadequate, the Court should reverse the District Court's dismissal of his Section 1681e(a) claim.

### 3. Because Section 1681e(a) provides Experian with an exception to liability, it is Experian who bears the burden to plead how its procedures are reasonable.

By requiring Abbink to allege specific details regarding Experian's procedures, the District Court also incorrectly shifted the burden of pleading onto Abbink. As previously explained, Abbink bears the burden of alleging facts that give rise to a reasonable inference that Experian's procedure are inadequate. Once he has done so, the burden shifts to Experian to plead how its procedures were reasonable.

Although this Court has not addressed pleading standards in the context of Section 1681e(a), it recently decided a highly analogous issue in *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019). In *Nayab*, this Court addressed whether a plaintiff must plead

an entity's actual unauthorized purpose for obtaining their consumer report to state a claim for a willful violation of Section 1681b(f)—the same claim that Abbink asserted against Lend Tech. *Id.* at 493. The Court found that "the district court erred in holding that Nayab, as the plaintiff, has the burden of pleading the actual purpose behind Capital One's procurement of her credit report." *Id.* at 493. Instead, a "plaintiff need allege only facts giving rise to a reasonable inference that the defendant obtained his or her credit report in violation of § 1681b(f)(1) to meet their burden of pleading." *Id.* In holding that Nayab had met her burden, the Court found it sufficient for her to negate each "permissible purpose for which Capital One could have obtained her credit report *and for which Nayab could possibly have personal knowledge*[.]" *Id.* at 496 (emphasis added).

The Court continued by shifting the burden to the recipient of the report to plead the authorized purpose for which they obtained the report. *See Nayab*, 942 F.3d at 495. In doing so the Court reasoned:

> First, the FCRA generally prohibits obtaining a credit report, 15 U.S.C. § 1681b(f), but then provides a numerous and diverse list of exceptions, 15 U.S.C. § 1681b(a). As such, the authorized purposes under § 1681b(a) are matters of exception that the defendant must plead as a defense. While "[o]ften the result of this approach is an arbitrary allocation

of the burdens," the distinction here is "valid [because] the exceptions to [the] statute or promise are numerous[,]" so "fairness [ ] requires that the adversary give notice of a particular exception upon which it relies and ... bear[s] the burden of pleading [the exception]." *See* 2 McCormick on Evid. § 337 (7th ed.). Second, placing the burden on the plaintiff would be unfair, as it would require the plaintiff to plead a negative fact that would generally be peculiarly within the knowledge of the defendant. *See id.* (because the "proof of the facts is inaccessible or not persuasive, it is [ ] fairer to act as if the exceptional situation did not exist and therefore to place the burden of proof and persuasion on the party claiming its existence."). Holding otherwise would effectively bar meritorious claims from ever coming to light and frustrate Congress' attempt to protect consumers' privacy.

*Nayab*, 942 F.3d at 495.

These same concerns are present and even more pronounced in Section 1681e(a) claims. To begin, CRAs are generally prohibited from furnishing consumer reports subject to the same list of permissible purposes set forth in Section 1681b. *See* 15 U.S.C. § 1681b(a). If anything, Section 1681e(a) provides CRAs with another affirmative defense. That is, even when a CRA furnishes a report for an impermissible purpose, it can avoid liability by implementing and following reasonable procedures in furnishing the report. Thus, Section 1681e(a) is functionally an exception or affirmative defense upon which a CRA can rely to avoid liability. Because this section can be fairly

37

characterized as an exception, the burden of proving its existence generally falls to the one who claims its benefits—in this case, Experian. *See Nayab*, 942 F.3d at 494-95 (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005)) ("[T]he general rule of statutory construction [is] that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits.").

Further, proving a Section 1681e(a) claim requires bringing forth facts that "would generally be peculiarly within the knowledge of the defendant." *Nayab*, 942 F.3d at 495. Perhaps more so than in *Nayab*, requiring consumers to plead specifics about a CRA's internal procedures before they've had the benefit of discovery would create a near insurmountable hurdle to state a Section 1681e(a) claim. Indeed, a consumer has even less information regarding a Section 1681e(a) claim than they would for a Section 1681b claim. At least with respect to the entity that obtains the report, the consumer likely has some relationship (i.e. creditor, bank, employer, etc.) or at the very least received some type of communication regarding credit or insurance. The same ties do not exist between a consumer and a CRA. In almost every

instance, a consumer will have no knowledge of the facts that transpired between a CRA and the recipient of their consumer report. More problematic, there is no means by which a consumer can obtain those facts pre-suit.

By contrast, a CRA is far better positioned to bring forth the facts upon which it relies to assert the claim that it adhered to reasonable procedures in releasing a consumer report. Hypothetically, it received the request from the third-party, properly vetted the third-party to ensure that it had a permissible purpose, and released the report in line with its procedures. More importantly, the CRA has a thorough understanding of its own procedures and how it applies those procedures to its subscribers. As such, a CRA is better positioned to bring forth the facts upon which it will rely.

Ultimately, it makes little sense to shift the burden of pleading an authorized purpose in the context of a Section 1681b claim and then require a consumer to plead specifics relating to a Section 1681e(a) claim. Instead, Experian should bear the burden of demonstrating that it implemented and followed reasonable procedures in disseminating Abbink's report to avoid liability for its misuse. To hold "otherwise

39

would effectively bar meritorious claims from ever coming to light and frustrate Congress' attempt to protect consumers' privacy."

As a final matter, even if Abbink continued to shoulder the burden of pleading here, the Complaint readily meets this standard or could have been amended. As previously stated, Abbink has alleged facts that directly bear on the reasonableness of Experian's procedures—including its failure to ensure that Lend Tech possessed a license to solicit Abbink, its failure to verify Lend Tech's business address and telephone number, and its failure to prevent the resale of consumer reports. To the extent necessary, and as explained more thoroughly in Section II, *infra*, Abbink can amend his complaint to detail how Experian violated its own written procedures. That is, Experian's failure to ensure that Lend Tech had a proper license to solicit Abbink is not only unreasonable it also directly violates Experian's own written procedures, which require it to verify that a subscriber possesses the proper licensing for their type of business.

In the end, the District Court's Order erroneously placed the burden on Abbink to allege how Experian's procedures are unreasonable. Accordingly, the Court should reverse the dismissal of

Abbink's Section 1681e(a) claim.

**D.** **Abbink Sufficiently Alleged A Willful Violation—Contrary To The District Court's View, Abbink Is Not Required To Allege Facts To Demonstrate That Experian Had Knowledge Of Lend Tech's Misuse.**

Lastly, the District Court's Order fundamentally misunderstands willful violations under the FCRA. The District Court found that Abbink's Complaint failed to allege sufficient facts to state a claim for a willful violation because it was "devoid of any factual allegations concerning Experian's state of mind or its knowledge that Lend Tech was not using the prescreen reports for their intended purpose." (ER15.) However, willful violations under the FCRA are not limited to knowing violations.

A willful violation can be one committed knowingly *or with reckless disregard* for its duties under the Act. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). Under *Safeco*, a reckless violation of the statute includes actions taken that constitute an unreasonable reading of the statute and creates a substantially greater risk of violation than the risk associated with a careless reading. *Id.* at 69–70. Here, the District Court erred by failing to consider that Experian acted in reckless disregard for its statutory duties.

In addition to failing to account for reckless violations of the Act, the District Court's Order also ignores that at the pleading stage "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts generally find that allegations that a defendant was aware of its duties but failed to comply are sufficient to avoid dismissal. *See Deschaaf v. Am. Valet & Limousine Inc.*, 234 F. Supp. 3d 964, 971 (D. Ariz. 2017) (finding allegations that the Defendant was informed of its duties under the FCRA was sufficient to state a claim for willness); *Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal."); *Robinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920, 929-30 (N.D. Ill. 2016) ("[T]he Complaint illustrates that Big Lots was aware of the requirement and did not adhere to it. Thus, the Complaint adequately alleges that Big Lots's violation was willful.").

Contrary to the District Court's conclusion, Abbink alleged facts to support his claim that Experian's violations of the FCRA were willful.

Specifically, he alleged that Experian regularly engages counsel and had knowledge of its FCRA responsibilities. (ER31-32.) He alleged that Experian repeatedly violated the FCRA by selling reports to Lend Tech absent any permissible purpose. (*Id.*) Further, because Experian generates a substantial portion of its income by aggregating and selling consumer reports to businesses, such as Lend Tech, its failure to implement reasonable procedures has a widespread, pervasive impact, and ran an unjustifiably high risk of harm. (*Id.*)

Additionally, Experian accepted Lend Tech's blanket assertions that it possessed a permissible purpose, repeatedly published Lend Tech's false phone number and incorrect business address on consumer reports, and failed to ensure that Lend Tech even possessed the proper license to solicit Abbink. If proven true, these allegations demonstrate that Experian either knew of Lend Tech's misuse of the reports or should have known. Together, and construed in a light most favorable to Abbink, these allegations sufficiently allege a willful violation.

At the end of the day, like the FCRA's reasonable procedures requirement, "[w]illfulness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1210

(C.D. Cal. 2007); *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1112 (N.D. Cal. 2016) (collecting cases) ("Courts in this circuit have found that '[w]illfullness under the FCRA is generally a question of fact for the jury.'"); *Snell v. G4S Secure Sols. (USA) Inc.*, 424 F. Supp. 3d 892, 902 (E.D. Cal. 2019).

Accordingly, the District Court's Order finding that Abbink failed to allege a willful violation was committed in error. Therefore, this Court should reverse the dismissal of Abbink's Section 1681e(a) claim.

## II. THE DISTRICT COURT ERRED IN DENYING ABBINK LEAVE TO AMEND HIS COMPLAINT.

Finally, the District Court also erred by denying Abbink an opportunity to amend his complaint. The denial of leave was premised exclusively on the lower court's erroneous conclusion that Abbink was required to have stated a Section 1681b claim against Experian as a prerequisite to pursuing a claim under Section 1681e(a). To the extent this Court believes it necessary, Abbink should have been permitted leave to amend his complaint.

It is well-settled that "[d]ismissal without leave to amend is improper 'unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *Levine v. Safeguard Health*

*Enterprises, Inc.*, 32 F. App'x 276, 277 (9th Cir. 2002) (quoting

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.1998)

(quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996))). In

Abbink's case, the District Court never afforded him an opportunity to

file an amended pleading setting forth additional facts. In denying

Abbink leave to amend, the lower court offered the following

explanation:

> Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). "Leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quotations and citations omitted). In this case, Plaintiff has alleged facts that affirmatively demonstrate that Experian did not violate Section 1681b(c), and, thus, it would be impossible for Plaintiff to now allege contrary facts demonstrating that Experian violated Sections 1681b(c) and 1681e. *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296-97 (9[t]h Cir. 1990) (affirming district court's dismissal of claim without leave to amend and holding that "[a]lthough leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading") (internal quotation omitted).

(ER16.) As explained in Section I.B, *supra*, the District Court erred by requiring Abbink to premise his Section 1681e(a) claim on Experian's own underlying violation of Section 1681b. This holding conflicts with *Pintos*, which held that a CRA can be held liable for its subscriber's violations of Section 1681b. *See Pintos*, 605 F.3d at 677. The holding also runs counter to the plain language of the statute, which requires CRAs to implement procedures to prevent the misuse of consumer reports by their subscribers. *See* 15 U.S.C. § 1681e(a). While Abbink believes his allegations are sufficient to state a claim under Section 1681e(a), if required, he can and will allege the following additional facts to support his claim.

First, Abbink can squarely allege that Experian failed to follow its own procedures. Experian's procedures require it to verify that its subscribers possess the proper licensing for their type of business as required by state, county, and city. Experian failed to follow this procedure by selling Abbink's (a Colorado resident) consumer report to Lend Tech without first verifying that it possessed any mortgage related license in the State of Colorado. In Colorado, "[i]t is unlawful for any person, firm, partnership, limited liability company, association, or

46

corporation to engage in the business or capacity of real estate broker or real estate salesperson in this state without first having obtained a license from the real estate commission." *Shotkoski v. Denver Investment Group, Inc.*, 134 P.3d 513, 515 (Colo. App. 1986). Again, Lend Tech did not hold any mortgage license in the State of Colorado.

Second, Abbink can also allege that Experian failed to implement any procedure to reevaluate Lend Tech itself or its permissible purpose. Had Experian implemented this procedure, it would have been aware that Lend Tech was misusing reports. That is, Abbink can allege that a few months after Experian started selling Lend Tech reports, Lend Tech changed its purported principal place of business. However, Lend Tech's purported new address wasn't its office at all. Instead, the new address was subleased to the company Docs Done Right, LP ("DDR"). DDR was another entity, like UDS, that obtained consumer reports from Lend Tech to solicit consumers for unlawful document preparation services. This is further evidence that Lend Tech was not a legitimate business.

Third, Abbink can allege that Experian failed to implement procedures designed to monitor its subscriber's use of its iScreen

Product (the system that Experian's subscribers' utilize to obtain consumer reports from its database). These procedures would have apprised Experian of Lend Tech's unlawful use. That is, despite being a mortgage lender, Lend Tech used the system to exclusively pull borrowers' student loan information—information that is inconsistent with its stated business purpose. More problematic, this failure to monitor Lend Tech's use conflicts with the Federal Trade Commission's ("FTC") guidance, which counsels CRAs to implement procedures to monitor suspicious activity and unauthorized access to its databases. *See* FTC Staff Report, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 66 (July 2011)[2] [hereafter "40 YEARS OF THE FCRA"]. Here, Experian had no such procedures.

Fourth, Abbink can allege additional facts to support his theory that Experian operates a "set it and forget it" process. Abbink will allege that Lend Tech was a sham entity that was created to obtain an Experian iScreen account. Abbink can further allege that Experian, for its part, conducted a flawed internal review of Lend Tech in 2017. The

---

[2] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited June 4, 2020).

review was limited to Lend Tech's ability to conduct business in the State of California. During the review, numerous issues arose to suggest that Lend Tech was a sham entity—including that it failed to possess any financial information, an active website, a telephone number, or functioning business email addresses. Lend Tech's purported broker submitted a mortgage broker license in the name of a different company. Lend Tech also supplied a proposed firm offer of credit mailer that was severely deficient—notably, it failed to even include an adequate Prescreen & Opt Out Notice, as required by the FCRA. *See* 15 U.S.C. § 1681m(d)(1); *see also* 16 C.F.R. § 642.3. Rather than deny Lend Tech access to consumer reports, Experian chose to advise Lend Tech as to how it could circumvent Experian's own internal systems.

More troubling, despite clear overlap between Lend Tech and its supposed sole lender, Chou Team Realty, LLC d/b/a MonsterLoans ("MonsterLoans"), Experian failed to look into the relationship. MonsterLoans sublet Lend Tech office space in its building, shared similar employees, and attempted to provide authenticity to Lend Tech's Experian application—including providing a letter to Lend Tech

claiming it would act as its sole lender for any mortgages it brokers. Despite the overlap, Experian failed to contact MonsterLoans in the course of its verification. This failure also conflicts with FTC guidance, which counsels CRAs to check the user's references. *See* 40 YEARS OF THE FCRA at 65. In this case, officers of MonsterLoans actually had a share in the profits of some of the entities that unlawfully solicited student loan borrowers.

Taken together, these additional allegations would be sufficient to state a claim against Experian for a violation of Section 1681e(a). If proven true, they would demonstrate that Experian either knew or should have known that Lend Tech was misusing consumer reports and was not actually making firm offers of credit to Abbink or the proposed class.

Because amendment would not be futile here, the District Court's denial of leave to amend was committed in error. To the extent this Court believes it is necessary, Abbink should be granted leave to amend.

## CONCLUSION

The District Court erred in concluding that Abbink failed to state

a claim against Experian for a willful violation of Section 1681e(a). Abbink sufficiently alleged that Experian released his report to Lend Tech absent any permissible purpose. Abbink further alleged facts that seriously call into question the reasonableness of Experian's procedures for preventing misuse. Taken together, these allegations plausibly demonstrate that Experian willfully violated Section 1681e(a) by failing to implement reasonable procedures designed to limit the furnishing of consumer reports to only permissible purposes. Alternatively, to the extent this Court finds additional factual allegations are necessary, Abbink should have been granted leave to amend his Complaint.

As such, Appellant Bryce Abbink respectfully requests that this Honorable Court reverse the decision of the District Court dismissing Abbink's claim against Experian for a willful violation of 15 U.S.C. § 1681e(a) and for such additional relief as the Court deems necessary and just.

Dated: June 4, 2020　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　By: _/s/ Taylor T. Smith_
　　　　　　　　　　　　　　*Attorney for Appellant Bryce Abbink*

# STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant Bryce Abbink herein identifies all "known related case[s] pending in this court." Abbink states that, following a diligent inquiry, there are no other related appeals or other cases pending in this Court.

Dated: June 4, 2020        By: */s/ Taylor T. Smith*

Taylor T. Smith
Woodrow & Peluso, LLC

*Attorney for Appellant Bryce Abbink*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,215 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as well as the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: June 4, 2020    By: */s/ Taylor T. Smith*

Taylor T. Smith
Woodrow & Peluso, LLC

*Attorney for Appellant Bryce Abbink*

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I also certify that on June 4, 2020, I served the foregoing document by U.S. mail to the following parties:

Lend Tech Loans, Inc.
1851 E. First St. #810
Santa Ana, California 92705

Unified Document Services, LLC
1560 Brookhollow Dr. Ste. 220
Santa Ana, California 92705

Dated: June 4, 2020       By: */s/ Taylor T. Smith*

                                  Taylor T. Smith
                                  Woodrow & Peluso, LLC

                                  *Attorney for Appellant Bryce Abbink*